UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY A. KOEHN,

          Plaintiff,                    Case No. 2:16-cv-11755
                                        District Judge Avern Cohn
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 15), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND AFFIRM THE COMMISSIONER'S
DECISION (DE 16)</u>**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 16),

and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

       Plaintiff, Larry A. Koehn, brings this action under 42 U.S.C. §§ 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for social security disability insurance

(DI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

15), the Commissioner's cross motion for summary judgment (DE 16) and the administrative record (DE 12).

## A.    Background

Plaintiff filed his application for benefits on September 17, 2012, alleging that he has been disabled since February 2, 2012, at age 52.  (R. at 164-165.) Plaintiff's application was denied, and he sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 76-92, 93-94.)  ALJ Ena Weathers held a hearing on July 18, 2014 ─ at which Plaintiff was represented by counsel ─ and thereafter determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 39-73, 19-38.)

Plaintiff requested review of the hearing decision, and was granted a filing extension. (R. at 5-13.)  It is not clear whether any new and material evidence was submitted.  On March 17, 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  Thus, ALJ Weathers's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on May 17, 2016.

## B.    Plaintiff's Medical History

Plaintiff's combined medical records span the period from June 22, 2011 through July 10, 2014. (R. at 277-398.)  The 122 pages of medical records are mostly comprised of treatment records, but also include June 22, 2011 and

February 16, 2013 consultative examinations (CEs) by internist R. Scott Lazzara, M.D. and Aleksandra Trifunovic, D.O. (R. at 277-285, 310-315).

These medical records will be discussed as necessary below.

### C.    Hearing Testimony

As noted above, Plaintiff testified at the July 18, 2014 hearing before ALJ Weathers.  (*See* R. at 44-63.)  As Plaintiff's credibility is not an issue currently before this Court, I will forego a summary of his testimony here and only cite it as necessary below.

### D.    The Administrative Decision

On September 8, 2014, ALJ Weathers issued an "unfavorable" decision. At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

engaged in substantial gainful activity since February 2, 2012, the alleged onset date.  (R. at 25.)  At **Step 2**, the ALJ found that Plaintiff has the following severe impairments:  depressive disorder, asthma, cervical and lumbar myositis, foot drop, degenerative disc disease (DDD) with arthritis, and obesity.  (R. at 25.)  At **Step 3**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 26-28.)  Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[2] to perform the exertional limitations of light work, with certain other exertional, postural, environmental, manipulative and social / mental limitations.  (R. at 28-32.)  At **Step 4**, the ALJ concluded that Plaintiff is unable to perform any past relevant work.  (R. at 32.)  At **Step 5**, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 33.)

### E.     Standard of Review

---

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.    Analysis

Plaintiff claims that the ALJ erred in her:  **(1)** consideration of the opinion evidence; and **(2)** RFC determination.  (DE 15 at 5, 11-19.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the

6

Commissioner's decision.  (DE 16 at 1, 7-19.)  I will address each argument in turn.

### 1.    Evaluating Opinion Evidence (20 C.F.R. §§ 404.1527, 416.927)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(b), 416.927(b).  The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Administrative law judges "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]"  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

At the heart of Plaintiff's first statement of error are his assertions that the ALJ assigned controlling "substantial weight" to the April 12, 2013 physical RFC assessment of state agency medical consultant, Natalie Gray, M.D. (R. at 83-85); yet, the ALJ:  **(a)** "ignores and does not even discuss" records from "two of Plaintiff's treating sources," presumably the June / July 2014 physical therapy records from T.L. Mianecki, D.O. (R. at 359-367, 395-397) and the June 10, 2014

7

diagnostic imaging records (R. at 391-394); **(b)** discussed, but "did not provide a discussion of weight assigned to," Dr. Mianecki's records dated August 5, 2011 through June 3, 2014 (R. at 286-295, 316-358), the June 22, 2011 CE report of Dr. Lazzara (R. at 277-285) or the February 16, 2013 CE report of Dr. Trifunovic (R. at 310-315); and **(c)** Dr. Gray did not have the benefit of certain records, such as the June 2014 records from Dr. Mianecki (R. at 348-352, 359-367, 383-397) or the June 2014 diagnostic imaging (R. at 391-394). (DE 15 at 11-15.) Therefore, the Court will consider whether the ALJ appropriately considered the opinions of these four physicians:

### a.    Natalie Gray, M.D. (State agency medical consultant)

### i.    April 12, 2013 physical RFC assessment

At the time of her April 12, 2013, physical RFC assessment, Dr. Gray had before her medical evidence of record from St. Johns River District Hospital, St. John Riverview Hospital, and Dr. Mianecki – seemingly Exhibits 2F, 3F and 4F, as well as the CE report from Great Lakes Medical Evaluations – Exhibit 5F. (R. at 77-79, 286-315.) Dr. Gray assessed exertional limitations that are consistent with light work, although she provided additional limitations to Plaintiff's ability to push and/or pull with the right lower extremity,[3] and further assessed postural and

---

[3] Exertional limitations include "sitting, standing, walking, lifting, carrying, pushing, and pulling . . . ." 20 C.F.R. §§ 404.1569a(b), 416.929a(b).

environmental limitations.  (R. at 83-86.)  Dr. Gray, and/or Beth Piasecki (the

disability adjudicator / examiner), concluded that Plaintiff was only "partially

credible."  (R. at 82, 86.)

### ii.    Consideration of Dr. Gray's opinion

The ALJ's decision assigned Dr. Gray's opinion "substantial weight," as it

was "prepared by an individual who is familiar with the agency standards and

because [it is] supported by the medical evidence of record."  (R. at 31.)  ALJ

Weathers appropriately considered Dr. Gray's opinion.

First, as the ALJ's language expresses, she considered the consistency

factor, which provides that "the more consistent a medical opinion is with the

record as a whole, the more weight we will give to that medical opinion."  20

C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  Relatedly, to the extent Plaintiff

challenges the assignment of "substantial weight" to a non-examining medical

opinion over that of a treating source (DE 15 at 11), an ALJ is permitted to do so

where it is supported by the record as a whole.  *Reeves v. Commissioner of Social

Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015); *see also Blakley v. Comm'r of Soc*.

*Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) ("Certainly, the ALJ's decision to accord

greater weight to state agency physicians over Blakley's treating sources was not,

by itself, reversible error.").  While the ALJ might have done a clearer job of

linking her "support" statement to specific medical records, the following

9

statements by the ALJ have support in the record, as appear immediately below
them:

> *". . . as detailed above, the objective imaging and clinical evidence of
> record simply does not demonstrate that the claimant suffers from any
> injury or pathology that could be expected to cause symptoms of the
> severity alleged."*
>
> Dr. Mianecki's February 23, 2012 notes that "X-rays reveal relatively
> significant arthritis with some disc space disease."  (R. at 290.)
>
> Dr. Mianecki's March 5, 2012 notes that "Previous x-rays of the
> lumbar spine were negative."  (R. at 289.)
>
> A March 28, 2012 MRI of the lumbar spine revealed multilevel DDD
> "with posterior disc bulging as noted.  Disc protrusions are not
> excluded[,]" some of which was expressly noted by the ALJ.  (R. at
> 30, 292-293.)
>
> On April 12, 2012, Dr. Mianecki noted that "X-rays of the hip are
> negative[,]" an observation that the ALJ expressly noted.  (R. at 30,
> 288.)
>
> On June 3, 2014, Dr. Mianecki was "await[ing] results of x-rays and
> labs."  (R. at 352, 387.)
>
> *"The claimant has undergone only very conservative treatment for his
> physical ailments . . . ."*
>
> On February 16, 2013, Plaintiff told CE Dr. Trifunovic that "he is
> pretty well controlled with his type 1 diabetes that he's had for 15
> years on Metformin and Glyburide."  (R. at 310; *see also* R. at 30,
> 313.)
>
> Dr. Mianecki's September 2013 and February 2014 notations that
> Plaintiff's blood pressure has been "well controlled" or "fairly well
> controlled" on his current medications.  (R. at 330, 340; *see also* R. at
> 31.)

Dr. Trifunovic's conclusion that Plaintiff "ambulates with a cane, which is not required, but does help him."  (R. at 313; *see also* R. at 30.)

*"An individual suffering from symptoms of the severity alleged would be expected to seek relief through means including compliance with existing treatment advice as well as alternatives such as physical therapy."*

During February and April of 2012, Dr. Mianecki noted the possibility of physical therapy.  (R. at 288, 290, 358.)

On February 16, 2013, Plaintiff informed CE Dr. Trifunovic that he "has never had physical therapy . . . ."  (R. at 30, 310.)

On September 3, 2013, and again on February 27, 2014, Plaintiff informed Dr. Mianecki that "he has been compliant with taking . . . medications as directed but has been having difficulty complying with the recommended levels of diet and exercise." (R. at 330, 340.)

On September 3, 2013, Plaintiff declined the brain MRI recommended by Dr. Mianecki, although this appears to have been due to his claustrophobia.  (R. at 31, 59, 334.)

On June 3, 2014, Dr. Mianecki informed Plaintiff that "a trial of physical therapy was indicated prior to consideration of surgery[.]" (R. at 352, 387.)

(R. at 32 (emphasis added).)  True, at the July 18, 2014 hearing, Plaintiff's attorney represented that that, "with the lack of insurance, there's a lot that he has been incapable of performing[,]" such as an EMG.  (R. at 71; *see also* R. at 288, 358.) However, this does not appear to be the basis of Plaintiff's instant appeal.

Second, despite Plaintiff's argument that Dr. Gray was "paid to deny" Plaintiff's claim for SSA benefits and "never even examined" him (DE 15 at 13),

the ALJ acknowledged that Dr. Gray, as a state agency medical consultant, is "highly qualified" and an expert "in Social Security disability evaluation."  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1); *see also Lucido v. Barnhart*, 121 F. App'x 619, 622 (6th Cir. 2005) ("the ALJ's findings are supported by the assessment of the reviewing physicians . . . who have the strongest claims to neutrality[,]" compared to the workmen's compensation carrier's doctor or the occupational medicine practitioner).

Third, the fact that Dr. Gray's opinion was based on an "incomplete record," by itself, is not fatal.  As the Sixth Circuit has explained:

> The Court's holding in *Blakley* [*v. Commissioner of Soc. Sec.*, 581 F.3d 399 (6ᵗʰ Cir. 2009)] . . . require[es] only that before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give "*some indication*" that he "*at least considered*" *that* <u>the source</u> *did not review the entire record*.  In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny.

*Kepke v. Commissioner of Social Sec.*, 636 F.App'x 625, 632 (6ᵗʰ Cir. 2016) (emphasis added) (internal citation omitted).  Thus, what the Sixth Circuit requires is that the ALJ acknowledge his awareness that *the state agency record reviewer* did *not* review the entire record, not merely that the *ALJ himself did* conduct a full review.  Here, the ALJ acknowledged receipt of post-hearing "additional exhibits," namely Exhibits 6F-8F.  (R. at 22.)  While she did not expressly cite Dr. Mianecki's June / July 2014 physical therapy records (R. at 359-367 [Ex. 7F], 395-

397 [Ex. 8F]) or the June 10, 2014 diagnostic imaging (R. at 391-394 [Ex. 8F]), the

ALJ discussed Exhibit 6F at length and expressly noted:  **(a)** Dr. Mianecki's

records from September 2013 (R. at 330-334) and February 27, 2014 (R. at 340-

344); **(b)** laboratory results from March 10, 2014 (R. at 345-347); and **(c)** Dr.

Mianecki's progress notes from June 3, 2014 (R. at 348-352), which were

duplicated in Ex. 8F (*see* R. at 383-387).  (R. at 31.)  By expressly noting these

dates and having previously assigned "substantial weight" to Dr. Gray's April 12,

2013 physical RFC assessment (Ex. 1A), the ALJ gave "some indication" that she

knew and "at least considered" that Dr. Gray did not review the entire record. (R.

at 31.)  It is without question that the ALJ knew that newly received records –

whatever their dates of service - could not have been reviewed by Dr. Gray before

they were even a part of the record, and the ALJ's date references make clear that

she was aware of this chronology.

I further note that the Social Security Ruling (SSR) which comments upon

"consideration of administrative findings of fact by state agency medical and

psychological consultants" provides, in part:

> . . . the opinions of State agency medical and psychological
> consultants and other program physicians and psychologists can be
> given weight only insofar as they are *supported by evidence in the
> case record*, considering such factors as the supportability of the
> opinion in the evidence including any evidence received at the
> administrative law judge and Appeals Council levels that was not
> before the State agency, the consistency of the opinion with the record
> as a whole, including other medical opinions, and any explanation for

> the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

SSR 96-6P (S.S.A. July 2, 1996) (emphasis added).  As the Sixth Circuit has explained, "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record.  The opinions need only be 'supported by evidence in the case record.'" *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (citing SSR 96-6P).  Thus, an argument that the ALJ erred by relying upon the April 12, 2013 opinion of Dr. Gray, *solely* because she did not have access to certain, later records from Plaintiff's treating physician Dr. Mianecki – such as those dated September 2013 through June / July 2014 - is unavailing.  As noted elsewhere in this report, the ALJ expressly considered all but the June 10, 2014 diagnostic imaging and the June / July 2014 physical therapy prescription / records, and, those not mentioned are addressed below in the Step 4 RFC discussion.

**b.     Dr. Mianecki (treating physician)**

Plaintiff was treated by Dr. Mianecki or his office during August 2011, February, March, April and October of 2012, September 2013, February 2014,

June 3, 2014, and June 25, 2014, and, seemingly, three times during July 2014.[4]
As such, there seems to be no debate that Dr. Mianecki is a treating source who has
provided Plaintiff "with medical treatment or evaluation and who has, or has had,
an ongoing treatment relationship with [Plaintiff]." 20 C.F.R. §§ 404.1527(a)(2),
416.927(a)(2).

Within the Step 4 RFC determination, the ALJ extensively discusses
multiple records from Dr. Mianecki. (R. at 30-31; R. at 290-291, 294-295, 289,
292-293, 288, 287; R. at 330-334, 340-344, 348-352; *see also* R. at 383-387.)
Plaintiff contends that the ALJ "never gives reasons as to why she rejects
Plaintiff's treating source opinions[,]" and "points to no substantial evidence" to
dispute same, nor does she "*provide weight analyses* of Plaintiff's treating or
examining sources." (DE 15 at 11-12.) In other words, Plaintiff is arguing that the
ALJ did not provide "good reasons . . . for the weight [given to the] treating
source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However,
as the Commissioner points out, "a mere diagnosis does not appear to be a
'medical opinion' as that term is used within the applicable regulations." *Davis v.
Comm'r of Soc. Sec.*, No. 11-CV-14094, 2012 WL 4378428, at *12 (E.D. Mich.
June 15, 2012), *report and recommendation adopted*, No. 11-14094, 2012 WL
4426202 (E.D. Mich. Sept. 25, 2012). "Medical opinions are statements from

---

[4] *See*, respectively, R. at 286-291, 357-358, 330-334, 340-344, 348-352, 383-387,
359-367, 395-397.

acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Plaintiff refers to "the medical opinions of Plaintiff's treating sources[,]" (DE 15 at 11-12); however, as it relates to Dr. Mianecki, it seems Plaintiff is just citing to treatment records, not medical source statements that provide commentary on his RFC. *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) ("Since Dr. Naum made no medical judgments, the ALJ had no duty to give such observations controlling weight or provide good reasons for not doing so.").[5]

It is true, as Plaintiff points out and as noted above, that the ALJ did not expressly cite Dr. Mianecki's June / July 2014 physical therapy records (R. at 359-367, 395-397) or, for that matter, the June 10, 2014 diagnostic imaging (R. at 391-394). However, an ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953). Moreover, as discussed in further detail below, Plaintiff has not shown how either

---

[5] The Court does note that the June 25, 2014 physical therapy evaluation includes both "cervical and upper extremity" and "low back and lower extremit[y]" assessments. However, the use of the word "you" suggests to the Court that these forms were completed by Plaintiff. (R. at 364, 365.)

the x-rays or the physical therapy records "establish greater limitations than those

contained in the ALJ's [RFC] finding[.]"  (DE 15 at 12-14, DE 16 at 9; *see also*

DE 16 at 13.)

### c.   Dr. Trifunovic (consultative examiner)[6]

Dr. Trifunovic performed a CE on February 16, 2013.  (R. at 310-315.)  Her

review of Plaintiff's history included discussion of asthma, hypertension, diabetes

and arthritis.  In general, the CE noted that Plaintiff "does have a cane," but "does

not require it[,]" further noting that Plaintiff's "gait is normal with a mild limp

noted on the left."  (R. at 311.)  The CE performed extremity, musculoskeletal and

neurological examinations, after which she concluded:

> Larry Koehn is a 53 year old male with multiple medical complaints,
> including hypertension, diabetes, and asthma which currently seem to
> be pretty well controlled on his medications. He does suffer from
> some polyneuropathy in his hands and feet. He also suffers from
> [DDD] over his lower back with some limitations in range of motion
> and right sciatica with right foot drop for which he ambulates with a
> cane, which is not required, but does help him. Otherwise, he also
> suffers from arthritis of the left hip and bilateral shoulders with some
> minimal decrease in range of motion of the shoulders.

(R. at 312-313.)

---

[6] The ALJ expressly considered some records from 2011, including a June 22,
2011 CE by internist R. Scott Lazzara, M.D. (R. at 277-285.)  (R. at 29-30.)
However, these records pre-date the alleged onset date of  February 2, 2012.  As
such, the Court need not address the ALJ's failure to assign weight to such
evidence, which, Plaintiff admits, "is before Plaintiff's onset date[.]"  (DE 15 at
12.)

The ALJ cited the February 16, 2013 CE by Aleksandra Trifunovic, D.O. at Step 2 to support a body mass index (BMI) and conclude that Plaintiff "falls within the obese classification . . . ." (R. at 25, 310-315). The ALJ also noted that the Step 3 finding - that Plaintiff's severe impairments do not meet or medically equal the specific criteria for any listing – "is supported by the medical opinion of the state agency and/or consultative physician(s), all of whom considered the relevant listings." (R. at 26.) Then, at Step 4, the ALJ gave two paragraphs of detailed consideration to Dr. Trifunovic's February 16, 2013 CE report. (R. at 30.)

Nevertheless, Plaintiff claims the ALJ did not "provide a discussion of weight assigned to" this opinion; however, given the ALJ's clear and express consideration of Dr. Trifunovic's CE report at Step 4, it certainly cannot be "assumed" that she "actually did not consider" this opinion "when writing her Unfavorable Decision." (DE 15 at 12.) Moreover, Plaintiff has not cited any authority, binding upon this Court, that the ALJ was required to assign weight to the "examining" CE report. (*Compare* DE 15 at 12, DE 16 at 11.) *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011) ("Because Watts was not Karger's treating source in December 2003, the ALJ would not have been under any special obligation to defer to that opinion or to explain why he elected not to defer to it . . . ."); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) ("the ALJ neither misstated nor ignored a treating

physician's opinion; he merely failed to explain why he favored several examining physicians' opinions over another's. The regulation at issue in *Wilson* simply does not apply, and there is no reason to depart from the usual harmless-error rule.").

### d.   Summary

As set forth above, ALJ Weathers expressly considered the records of Drs. Gray, Mianecki and Trifunovic, and Plaintiff has not shown reversible error in the ALJ's September 8, 2014 consideration of these opinions, in addition to other evidence.  As such, the ALJ did not based her decision "solely on the medical opinion" from state agency medical consultant, Dr. Gray.  (DE 15 at 13, DE 16 at 14.)  In sum, the ALJ appropriately assigned "substantial weight" to Dr. Gray's April 12, 2013 opinion, and the ALJ's treatment of the opinion evidence should be affirmed.

### 2.   Step 4 RFC assessment

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e).  "'ALJs must not succumb to the temptation to play

doctor and make their own independent medical findings.'"  *Simpson*, 344 F.

App'x at 194 (6th Cir. 2009) (quoting *Rohan*, 98 F.3d at  970).

> Pursuant to Social Security Rule 96-8p, the RFC assessment must include:
>
> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).   In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

not require the ALJ to discuss those capacities for which no limitation is alleged."

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).  Instead, the

ALJ '"need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-related

activities, and explain the resolution of any inconsistencies in the record."' *Id.*

(quoting *Bencivengo v. Comm'r of Soc. Sec.,* No. 00–1995,  251 F.3d 153, slip op.

at 5 (3d Cir. Dec. 19, 2000).

Plaintiff claims that the ALJ "ignored pertinent medical records and did not

provide any discussion of same . . ." within the Step 4 RFC determination.  (DE 15

at 16.)  In particular, Plaintiff takes issue with the ALJ's failure to address the June

10, 2014 diagnostic imaging and the June / July 2014 physical therapy records, as

well as the ALJ's treatment of Plaintiff's use of a cane.  (DE 15 at 17-18; *see also*

DE 15 at 12-13).

### a. Diagnostic imaging

On June 10, 2014, Plaintiff underwent x-rays of the cervical and lumbosacral

spine, as well as the right hip and right elbow.  While the hip and elbow x-rays

were "negative," the cervical spine imaging revealed "mild degenerative and

discogenic changes at C6-C7," and the lumbosacral spine imaging revealed

"degenerative and discogenic changes involving the lumbar spine . . .[,]" but "no

acute compression fracture, spondylolysis or spondylolisthesis."  (R. at 391-394.)

The ALJ had this evidence at the time she issued her September 8, 2014

decision.  (R. at 22.)  Yet, it was not expressly discussed within the decision.

Nonetheless, this is not reversible error.  I note again that an ALJ is not obligated

to expressly mention each piece of evidence.  *See Bailey*, 413 F. App'x at 855.

Moreover, the ALJ had already acknowledged Plaintiff's severe impairments of

cervical and lumbar myositis, foot drop, DDD with arthritis, and obesity at Step 2,

and, presumably as a result of these, the ALJ implemented exertional, postural and

other limitations within the Step 4 RFC determination.  (R. at 25, 28.)  Plaintiff's

argument does not explain how the ALJ's RFC limitations fail to address the

diagnostic imaging results.  (*See* DE 15 at 17.)  In addition, Plaintiff has not helped

to clarify how this diagnostic imaging renders inconsistent the ALJ's statement that

"the objective imaging and clinical evidence of record simply does not demonstrate

that the claimant suffers from any injury or pathology that could be expected to

cause symptoms of the severity alleged."  (R. at 32, DE 15 at 17.)  Nor is this

Court inclined or permitted to re-weigh the evidence with a more favorable bent

toward the Plaintiff on appeal.  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411,

414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does

not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide

questions of credibility, or substitute its judgment for that of the ALJ.").

### b.    Physical therapy

At the July 18, 2014 hearing, Plaintiff testified that he has recently tried

physical therapy.  (R. at 53.)  Moreover, Plaintiff's counsel stated that she would

be submitting physical therapy records.  (R. at 42, 71.)  It is clear that physical

therapy records from June / July 2014 were submitted, as the ALJ's September 8,

2014 decision acknowledged receipt of the related exhibits.  (R. at 22, R. at 359-

367 [Ex. 7F], 395-397 [Ex. 8F]).  Still, within her the Step 4 RFC determination,

the ALJ expressly cited Dr. Trifunovic's February 16, 2013 CE report and noted

that Plaintiff "had never undergone physical therapy[.]"  (R. at 30, 310.)  Later, the

ALJ reasoned, "[a]n individual suffering from symptoms of the severity alleged

would be expected to seek relief through means including compliance with existing treatment advice as well as alternatives such as physical therapy."  (R. at 32.)

Plaintiff takes issue with this "contradictory" statement.  (DE 15 at 17.)  To be sure, these records seem to establish that Dr. Mianecki prescribed PT on June 16, 2014, Plaintiff underwent lumbosacral and cervical/thoracic evaluation on June 25, 2014  for diagnoses such as low back pain, cervicalgia, and neck pain - and Plaintiff returned for PT three times during July 2014.  (R. at 359-367, 395-397).  However, even if the ALJ had neglected to consider the June / July 2014 physical therapy records, Plaintiff has failed to show how the ALJ's inaccurate statement renders insufficient the myriad limitations the ALJ placed within the Step 4 RFC.  (*See* DE 15 at 17.)  Moreover, the statement was made in a paragraph that challenges Plaintiff's credibility.  (S*ee* top of R. at 32.)  Yet, as noted above, credibility is not an issue before this Court.[7]

### c.  Cane

During the hearing, Plaintiff testified that he was using a cane, because he trips "fairly easily" with his drop foot.  He took the cane to his doctor, who said: "I don't need to prescribe you one since you're already using, . . . continue using it."  (R. at 53.)  At Step 4, the ALJ determined that Plaintiff "requires a cane for

---

[7] The only mention of credibility in Plaintiff's motion appears within the "standard of review."  (DE 15 at 10.)  The ALJ's credibility finding is not identified as an issue on appeal.

ambulation on uneven surfaces." (R. at 28.) In so doing, the ALJ noted that Plaintiff "presented to the hearing with a cane, which he said he uses with his left (dominant) hand." (R. at 29, 60.) Citing the February 16, 2013 CE report, the ALJ observed that Plaintiff "had been using a cane for about a year for support because he tripped occasionally[,]" but also that "he did not require a cane, but it helped him." (R. at 30, R. at 310, 311, 313.) In addition, at Step 5, the ALJ noted that the VE's testimony regarding cane use was based on education and experience. (R. at 33, 66, 69.)

Plaintiff claims that the ALJ's requirement for a "cane for ambulation on uneven surfaces," when combined with light work, does not comply with SSR regulations and case law. (DE 15 at 18.) This Court has observed that "[t]he use of a cane to ambulate has been found to preclude light work in those instances in which a claimant's ability to lift or carry twenty pounds is adversely impacted by the cane use." *Borgman v. Comm'r of Soc. Sec.*, No. CIV.A. 11-12938, 2012 WL 3542501, at *12 (E.D. Mich. July 9, 2012), *report and recommendation adopted*, No. CIV.A. 11-12938, 2012 WL 3537004 (E.D. Mich. Aug. 16, 2012) (citing *Jones v. Comm'r*, No. 10–840, 2012 WL 967509, at *5 (W.D.Mich. Feb.8, 2012), *Love v. Comm'r*, 605 F.Supp.2d 893, 907 (W.D.Mich.2009)). In *Borgman*, the case was remanded to determine "whether Plaintiff's use of a cane for ambulation and balance interfere with his ability to lift and carry up to twenty pounds at a time,

and if so whether that precludes an RFC of light work." *Id.,* 2012 WL 3542501, at

*12. However, in the case at bar, the VE testified that the jobs which she identified

would not be changed, even if Plaintiff were required to use a cane "for any

walking on even or uneven surfaces . . . ." (R. at 69.) *See Scott v. Comm'r of Soc.

Sec.*, No. 14-11500, 2015 WL 4634077, at *6 (E.D. Mich. July 6, 2015), *report

and recommendation adopted*, No. 14-CV-11500, 2015 WL 4633927 (E.D. Mich.

Aug. 3, 2015) ("the vocational expert has already provided testimony that plaintiff

could perform a significant number of jobs in the light work category, *despite* the

need to use a cane for standing and walking."). *See also Bates v. Comm'r of Soc.

Sec.*, No. 1:15-CV-739, 2016 WL 4607566, at *3 (W.D. Mich. Sept. 6, 2016) ("In

this instance, the Court discerns no reason why Plaintiff cannot use a cane with one

hand while carrying objects with the other."). Here, where the RFC "requires a

cane for ambulation on uneven surfaces[,]" and where the VE testified that the jobs

about which she testified would not be changed, even if Plaintiff were required to

use the cane "for any walking on even or uneven surfaces," I not see the need to

remand for a determination of whether "Plaintiff's use of a cane might limit or

preclude light work . . . ." *McEwen v. Comm'r of Soc. Sec.*, No. 12-13298, 2013

WL 4550464, at *11 (E.D. Mich. Aug. 28, 2013).

### d.    Summary

"[D]uring the first four steps, the claimant has the burden of proof[.]"

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Although this

portion of Plaintiff's argument takes issue with the ALJ's failure to mention the

June 10, 2014 diagnostic imaging or the June / July 2014 physical therapy records,

Plaintiff has not shown how these pieces of evidence would render invalid the

limitations imposed by the ALJ at Step 4.  Nor is the Undersigned convinced that

the ALJ improperly accounted for Plaintiff's cane use.

### G.     Conclusion

In sum: (1) the ALJ properly evaluated the opinion evidence; and (2)

Plaintiff has not successfully challenged the ALJ's Step 4 RFC assessment.

Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for

summary judgment (DE 13), **GRANT** Defendant's motion for summary judgment

(DE 14), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 18, 2017                 s/Anthony P. Patti
                                     Anthony P. Patti
                                     UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on July 18, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti